IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| SYSTEMIC FORMULAS, INC., a Utah Corporation,<br><br>                    Plaintiff,<br><br>v.<br><br>DAEYOON KIM, an individual, INNOVITA, LLC, a Utah Limited Liability Co., and DOES 1 through 50,<br><br>                    Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART PLAINTIFF'S MOTION TO COMPEL FURTHER RESPONSES TO PLAINTIFF'S FIRST SET OF SPECIAL INTERROGATORIES TO DEFENDANTS**<br><br>Case No.  1:07-cv-159 TC<br>District Judge Tena Campbell<br>Magistrate Judge David Nuffer |

Introduction

        This case arises from Systemic Formulas, Inc.'s (Systemic) allegations against Daeyoon

Kim (Kim) and Innovita, LLC (Innovita) (collectively, the Defendants) for misappropriation of

trade secrets, trademark infringement, unfair competition, computer fraud, and breach of

contract.[1]  Systemic is a health supplement manufacturer.[2]  Systemic has made efforts to

maintain the secrecy of Systemic's formulas, recipes, and customer lists, including requiring the

execution of confidentiality and non-disclosure agreements.[3]  In or about 1996, Systemic hired

Kim as Director of Research, and Kim executed a confidentiality and non-compete agreement.[4]

Kim was employed in this capacity at Systemic for approximately ten years.[5]

---

[1] Memorandum of Points & Authorities in Support of Plaintiff's Motion to Compel Further Responses to Discovery and for Reasonable Expenses (Supporting Memorandum) at 2, docket no. 135, filed January 23, 2009.
[2] *Id.*
[3] *Id.*
[4] *Id.* at 3.
[5] *Id.* at 4-5.

On or about September 22, 2006, Kim "abruptly resigned his employment with Systemic."[6]  Shortly thereafter, Kim requested that Systemic agree to modify the confidentiality and non-competition agreement.[7]  No modification was accomplished.[8]  Systemic alleges that Kim, through Innovita, developed and is offering for sale competing nutritional supplement formulas designed to replicate Systemic's most popular products.[9]  Systemic alleges the only material difference between Systemic's and Innovita's products are the exclusion of RNA/DNA (glandulars) from Innovita's product line.[10]  Systemic also alleges that while Kim was at Systemic, he was "specifically directed to research the development of a line of nutritional supplements without the ingredient . . . 'glandulars.'"[11]

Systemic filed its complaint against Innovita and Kim on November 26, 2007.[12]  The matter now before the court is Systemic's motion to compel further interrogatory responses from Kim and Innovita, and for attorney's fees incurred in connection with this motion.[13]

Systemic took an early deposition from Kim, but Systemic felt that Kim failed to provide significant information at the deposition.[14]  Later, Systemic obtained a letter Kim wrote a third party which contradicts his deposition testimony.[15]  The letter (Lundstrom Letter) generally summarizes the history of development efforts that Systemic alleges violate its agreements with Kim.[16]  Kim failed to produce letters he admits he sent to others which are similar to the

---

[6] *Id.* at 5.
[7] *Id.*
[8] *Id.*
[9] *Id.* at 6.
[10] *Id.*
[11] *Id.* at 4.
[12] Complaint, docket no. 2, filed November 26, 2007.
[13] Motion to Compel Further Responses to Plaintiffs' First Set of Special Interrogatories to Defendants filed by Plaintiff Systemic Formulas, docket no. 134, filed January 23, 2009.
[14] Supporting Memorandum at 7.
[15] *Id.*
[16] Letter from Daeyoon Kim to Kristin Lundstrom (Lundstrom Letter) (Feb. 5, 2007), attached as Exhibit A to the Declaration of Michael Vivoli . . . , docket no. 136, filed January 23, 2009.

Lundstrom Letter[17] and his responses to discovery fail to clarify the contradictions between his

deposition testimony and the letter.[18]

Discussion

Motion to Compel

Pursuant to Rule 33, a party may serve on another party interrogatories[19] that relate to

any relevant, nonprivileged matter.  Interrogatories must, "to the extent [they are] not objected

to, be answered separately and fully in writing under oath."[20]  If "a party fails to answer an

interrogatory submitted under Rule 33,"[21] Rule 37(a) permits the party seeking discovery to

"move for an order compelling an answer."[22]  For purposes of Rule 37(a), "an evasive or

incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or

respond."[23]  The movant must include proof of a "good faith" attempt "to confer with the person

or party failing to make disclosure or discovery in an effort to obtain it without court action."[24]

***Kim's Answers to Interrogatories***

Special Interrogatory No. 1

Systemic requests Kim "[s]tate the date on which you first began developing herbal

supplement formulas without RNA/DNA factors (glandulars) as an ingredient."[25]  Kim responds

that

---

[17] Supporting Memorandum at 8 n.2.
[18] Memorandum of Points & Authorities in Reply to Defendants' Opposition to Plaintiff's Motion to Compel Further Responses to Discovery and for Reasonable Expenses (Reply Memorandum) at 2-5, docket no. 139, filed February 23, 2009.
[19] Fed. R. Civ. P. 33(a)(1)-(2).
[20] Fed. R. Civ. P. 33(a)(3).
[21] Fed. R. Civ. P 37(a)(3)(B)(iii).
[22] Fed. R. Civ. P. 37(a)(3)(B).
[23] Fed. R. Civ. P. 37(a)(4).
[24] Fed. R. Civ. P. 37(a)(1).
[25] Plaintiff Systemic Formulas, Inc.'s First Set of Special Interrogatories to Defendant Daeyoon Kim (Interrogatories to Kim) at 4 attached as Exhibit B to Declaration of Michael W. Vivoli, docket no. 136, filed January 23, 2009.

> [I]n approximately 2001 . . . Dr. Kim approached Mr. Wheelwright [a principal at
> Systemic] about the possibility of such a product line.  Mr.Wheelwright was not
> interested in such a product line and the project was not pursued.  After Dr. Kim left
> Systemic he decided to develop a new line of product formulations without animal
> products, however, these new product formulations were not based on or derived from
> any of the Systemic product formulas.[26]

Defendants claim this is a "full and complete answer to the question presented."[27]

But they are wrong.  An interrogatory is an opportunity for a specific question to be met with a specific answer.  This general statement is not satisfactory, particularly in light of the statements Kim made in the Lundstrom Letter that clearly state Kim's investigation and resolution to create new products was a compelling reason for his departure from Systemic.  "I decided these products could not be produced at Systemic . . . .  I left Systemic and formed my own company."[28]  The Lundstrom Letter is a summary of a history that has far more detail, and Systemic is entitled to this detail.

Special Interrogatory No. 2

Systemic requests Kim "[i]dentify the date on which you claim you first developed the idea of form codes."[29] "Kim responds that the idea for form codes was first developed by him in mid-October, 2006."[30]  The information is critical because Kim left Systemic in October 2006. The precise date should be provided, or if Kim is unable to provide a more specific date, or a range of dates, Kim should amend his answer to state that greater specificity is not possible.  Of course, that inability to be specific as to something so important to him and to this litigation may carry its own perils.

---

[26] Daeyoon Kim's Response to Systemic's First Set of Special Interrogatories (Kim's Responses) at 5-6, attached as Exhibit D to Declaration of Michael W. Vivoli, docket no. 136, filed January 23, 2009.
[27] Defendants' Opposition to Plaintiff's Motion to Compel Further Response to Discovery and for Reasonable Expenses (Opposition Memorandum) at 5-6, docket no. 138, filed February 13, 2009.
[28] Lundstrom Letter at 1.
[29] Interrogatories to Kim at 4.
[30] Kim's Responses at 6.

<u>Special Interrogatory No. 3</u>

Systemic requests Kim "[i]dentify all persons who participated in developing form codes with you, including but not limited to the 'colleagues' identified in your letter to Kristen Lundstrom."[31] "Dr. Kim responds that he relied on many colleagues in the field of nutritional supplements who had published articles, particularly on the internet, whose articles and published expertise he relied upon."[32] Defendants contend that Kim's reference to "other colleagues" does not "conclusively mean that [Dr. Kim] actually worked with other scientists in the process of developing the Innovita line of products."[33] This statement appears to be a direct contradiction to the Lundstrom Letter in which Kim states that "[t]he colleagues of mine, who work at the worldly [sic] renowned genetic labs, and I got together; I was able to convince them with this critical issue and received their commitments to start searching for resolutions."[34]

Chronologically, this statement appears in the Lundstrom Letter in the timeframe before Kim left Systemic. The level of detail in the letter is far greater than the level of detail in the answer to the interrogatory. Yet, the letter suggests that Kim cannot include all the available detail about his research in the letter and he invites the recipient to call him to discuss it.[35] Systemic is entitled to receive a much more clear and lengthy response than Kim has provided.

If by "other colleagues" Kim was *exclusively* referring to authors of internet articles, Kim should amend his answer to Systemic's Interrogatory no. 3 to state that he did not "actually work" with other persons in the development of Innovita's product line. Again, an answer contradictory to the Lundstrom Letter carries its own perils.

---

[31] Interrogatories to Kim at 4.
[32] Kim's Responses at 7.
[33] Opposition Memorandum at 3.
[34] Lundstrom Letter at 1.
[35] *Id*. at 1-2.

Special Interrogatory No. 4

Systemic requests Kim "[i]dentify the genetic laboratory in which you claim you developed form codes, as set forth in your letter to Kristen Lundstrom."[36] "Dr. Kim responds that he relied on many colleagues in the field of nutritional supplement who had published articles, particularly on the internet, whose articles and published expertise he relied upon."[37]

If Kim did not work in a genetic laboratory to develop Innovita's products, he should amend his answer to Systemic's Interrogatory No. 4 to make it directly responsive.

Special Interrogatories Nos. 5 and 6

Systemic requests Kim "[i]dentify all documents that evidence the amount of gross sales earned by Innovita, LLC" and "identify all documents that evidence the total expenses associated with generating the gross sales."[38] Systemic insists "Kim has provided nothing that reflects the costs of sales . . . ."[39] According to the Defendants, this information has been produced in the form of "financial documents including detailed sales information for 2007 and 2008 and Innovita's general ledger for both 2007 and 2008."[40] Within ten days of the date of this order, Defendants' counsel shall provide the court and Plaintiff's counsel with copies of those documents physically highlighting the portions that show costs of Innovita sales so the court may determine whether the documentary response is satisfactory.

Special Interrogatory No. 7

---

[36] Interrogatories to Kim at 5.
[37] Kim's Responses at 8.
[38] Interrogatories to Kim at 5.
[39] Reply Memorandum at 6.
[40] Opposition Memorandum at 4.

Systemic requests Kim "[i]dentify all of your sales representatives, both current, former, and prospective."[41]  "Dr. Kim responds that he has no sales representatives, nor has he ever had any sales representatives nor does he have any prospective sales representatives."[42]

This answer is sufficient, and no further response by Kim is required.

Special Interrogatories Nos. 8 and 9

In Special Interrogatories, 8 and 9, Systemic requests Kim provide a list of "all of your customers, including…customers of Innovita," and "for each customer indentified . . . describe with particularity the circumstances under which each customer became a customer of yours."[43] "Dr. Kim responds that he has no customers."[44]  An Innovita customer list was provided allegedly by Innovita.[45]  This is addressed later under Special Interrogatories Nos. 2 and 3 to Innovita, and as stated there, the same order applies to both Innovita and Kim, regarding customer list.

As to circumstances under which persons became customers, Kim did not respond to the interrogatory.  Counsel points out[46] Kim did state in a declaration that

> [A]t Innovita we have specifically avoided the solicitation of people that we know
> are customers of Systemic, although if approached by former Systemic customers
> we have not solicited we have answered their questions and sent product to them
> if they requested. Several of these people are now Innovita customers."[47]

This statement does not respond to the interrogatory.  The Lundstrom Letter appears to clearly contradict this statement.  Formation of customer relationships is a central issue, particularly where Kim asserts in the Lundstrom Letter that his motivation for his new work

---

[41] Interrogatories to Kim at 5.
[42] Kim's Responses at 9.
[43] Interrogatories to Kim at 5.
[44] Kim's Responses at 10.
[45] Memorandum in Opposition at 4.
[46] *Id.* at 5.
[47] Declaration of Dr. Kim in Opposition to Plaintiff's Motion for Preliminary Injunction at ¶18, docket no. 78, filed July 3, 2008.

came from as many as "a dozen phone calls in one day" from Systemic customers.[48]  The letter

opens with Kim's desire "to make contacts with my old Systemic friends."[49]  Kim's response to

the interrogatory is inadequate and must be supplemented, in detail.

***Innovita's Answers to Interrogatories***

Special Interrogatory No. 1

Systemic requests Innovita "[s]tate the date on which you first began selling herbal

supplemental formulas without RNA/DNA factors (glandulars) as an ingredient."[50]  In response

to Systemic's request, Innovita committed to "produce documents that will demonstrate when it

first sold herbal supplement formulas."[51]  Defendants claim they produced such documents,[52] but

Plaintiffs contend they have received no documents from Innovita that provide the date on which

Innovita began selling herbal supplement formulas.[53]

The question is straightforward and not asking for an assembly of data but for a date.

Reference to documents is not appropriate for a single element answer such as this.  Innovita

must amend its response to specify the date on which Innovita began to sell herbal supplement

formulas without RNA/DNA factors as an ingredient.

Special Interrogatories Nos. 2 and 3

Systemic requests Innovita "[i]dentify all of your current and former customers" and "for

each customer indentified . . . describe with particularity the circumstances under which each

customer became a customer of yours."[54]

---

[48] Lundstrom Letter at 1.
[49] *Id.*
[50] Plaintiff Systemic Formulas, Inc.'s First Set of Special Interrogatories to Innovita, LLC (Interrogatories to Innovita) at 4, attached as Exhibit C to Declaration of Michael W. Vivoli, docket no. 136, filed January 23, 2009.
[51] Innovita's Response to Systemic's First Set of Special Interrogatories (Innovita's Responses) at 5, attached as Exhibit D to Declaration of Michael W. Vivoli, docket no. 136, filed January 23, 2009.
[52] Opposition Memorandum at 5.
[53] Supporting Memorandum at 14.
[54] Interrogatories to Innovita at 4.

Systemic claims that the documents produced by Innovita are not specified in sufficient detail for the Systemic to locate the relevant information.[55]  Innovita and Kim must provide the specific Bates numbers of the documents produced which constitute the customer list.

Formation of customer relations is central to this litigation.  The Lundstrom Letter is evidence tending to show Kim's conscious contact with Systemic customers.  Innovita has made no substantial objection to disclosing the circumstances of formation of its customer relationships. In fact, Innovita's only argued objection is that the interrogatory is "nonsensical" because it erroneously "refers to customers identified in Interrogatory No. 8, but Interrogatory No. 8 is directed to Innovita's products." [56]  Actually, the words used in Innovita's responses were that the interrogatory was "hopelessly vague and ambiguous."[57]  Innovita's feigned confusion, hyperbole and hypertechnicality enhances the court's sense that Innovita is consciously avoiding its obligations.  It is obvious that Special Interrogatory No. 3 means to refer to Special Interrogatory No. 2 – those two adjacent interrogatories are the only ones in which the capitalized words "CUSTOMER" appear.  Innovita must respond in detail to Special Interrogatory No. 3.

Special Interrogatories Nos. 4 and 5

Systemic requests Innovita "[i]dentify all documents that evidence the amount of your gross sales" and "[i]dentify all documents which evidence your cost of goods."[58]  In response to Systemic's request, Innovita committed to "produce documents in its possession that will show

---

[55]     If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by:
          (1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could . . .
Fed. R. Civ. P. 33(d).
[56] Memorandum in Opposition at 5.
[57] Innovita's Responses at 7.
[58] Interrogatories to Innovita at 4-5.

gross sales earned by Innovita."[59]  Defendants claim they produced such documents,[60] and Systemic contends they have received no responsive documents from Innovita.[61]

The discussion is identical to that presented on Special Interrogatory No. 6 to Kim. Within ten days of the date of this order, Defendants' counsel shall provide the court and Plaintiff's counsel with copies of those documents physically highlighting the portions that show costs of Innovita goods so the court may determine whether the documentary response is satisfactory.

Special Interrogatory No. 6

Systemic requests Innovita "[i]dentify the date on which you first began selling products."[62] Defendants claim they produced responsive documents,[63] and Systemic contends they have received no responsive documents from Defendants.[64]  Again, the question is straightforward and not asking for an assembly of data but for a date.  Innovita must amend its response to specify the date on which Innovita began to sell its products.

Special Interrogatory No. 7

Systemic requests Innovita "[i]dentify all of your sales representatives, both current, former and prospective."[65] Defendants claim a complete customer and sales representative list has been produced.[66]  Systemic claims that Defendants have not been able to point to where a complete list was provided.[67]

---

[59] Innovita's Responses at 7.
[60] Opposition Memorandum at 6.
[61] Supporting Memorandum at 16.
[62] Interrogatories to Innovita at 5.
[63] Opposition Memorandum at 6.
[64] Supporting Memorandum at 16.
[65] Interrogatories to Innovita at 5.
[66] Opposition Memorandum at 6.
[67] Supporting Memorandum at 16.

Innovita should amend its response to state the Bates number of documents which provide the customer and sales representative list.

Special Interrogatory No. 8 (first and second)

Systemic requests Innovita "[l]ist all of your current products" and "[f]or each product listed . . . describe the circumstances surrounding your development of each product."[68] Defendants claim they produced responsive documents.[69]  The group of documents identified by the Defendants only show "when computer files were created for the various products, which files were created after some extensive analysis of available literature."[70]  The answer itself states that the dates of the files are *after* the date work started.  There is no description of circumstances of development, or even persons involved.

Innovita must amend its response to accurately provide the requested information.

Special Interrogatories Nos. 9-10

Systemic requests Innovita to "[l]ist all of your prospective products under development" and "for each product listed . . . describe the circumstances surrounding your development of each product."[71]  Innovita responds that "it has no products under development" at this time.[72]

Innovita's response is sufficient, and no further response is required.

Systemic's Motion for Attorneys' Fees

Fed. R. Civ. P. Rule 37(a) provides that "the court must . . . require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion."[73]  However, the court

---

[68] Interrogatories to Innovita at 5.
[69] Opposition Memorandum at 6.
[70] Innovita's Responses at 11.
[71] Interrogatories to Innovita at 5.
[72] Innovita's Responses at 11.
[73] Fed. R. Civ. P. 37(a)(4)(A).

must not order payment if it finds: "(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust."[74]

Kim and Innovita's responses and arguments are not substantially justified, and the tone and content of the letters between counsel show that a sufficient good faith effort was made to obtain compliance before the motion was filed.  There are no other circumstances making an award of expenses unjust.

Systemic claims a total of $4,500.00 in expenses in connection with this motion.[75] Defendants have not responded to the claimed amount; only as to liability.  Defendants may submit any argument about the amount within ten days of this order.

## ORDER

IT IS HEREBY ORDERED that the motion to compel[76] is GRANTED IN PART as provided herein.

May 20th, 2009.

BY THE COURT:

_____
David Nuffer, U.S. Magistrate Judge

---

[74] *Id.*
[75] Declaration of Michael W. Vivoli at 10; Supplemental Declaration of Michael W. Vivoli . . . at 4, docket no. 140, filed February 23, 2009.
[76] Motion to Compel Further Responses to Plaintiffs' First Set of Special Interrogatories to Defendants filed by Plaintiff Systemic Formulas, docket no. 134, filed January 23, 2009.