# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
## NORTHERN DIVISION

| | |
|---|---|
| SYSTEMIC FORMULAS, a Utah corporation,<br><br>Plaintiff,<br><br>v.<br><br>DAEYOON KIM, an individual, and INNOVITA, a Utah limited liability company,<br><br>Defendants. | **ORDER AND MEMORANDUM DECISION**<br><br>Case No. 1:07-cv-00159-TC-DN<br><br>Judge Tena Campbell |

      Defendant Daeyoon Kim was the General Manager and Director of Research at Plaintiff Systemic Formulas, Inc. (Systemic) until he left on October 6, 2006, to start his own company, Defendant Innovita, LLC (Innovita). Both Innovita and Systemic market health supplements. Innovita's supplements are vegetarian and Systemic's are not.

      According to Systemic, when Dr. Kim left Systemic, he misappropriated Systemic's nutritional formulas, modified them by removing the animal glandular components, and began selling, through Innovita, vegetarian dietary supplements that are derived illegally from Systemic's proprietary information. Systemic claims that Dr. Kim breached his employment agreement, misappropriated Systemic trade secrets, copied Systemic's trade dress, intentionally interfered with Systemic's business relationships, and violated the Computer Fraud and Abuse Act.[1] Defendants moved for summary judgment, but because there are disputed issues of

---

[1] In its complaint, Systemic also alleges trademark infringement, but it has failed to identify any marks that were infringed. To the extent that Systemic still maintains a trademark infringement

material fact as to each claim, the court denies Defendants' motion.

## ANALYSIS

### Legal Standard

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P 56(c). The court "view[s] the evidence and make[s] all reasonable inferences in the light most favorable to the nonmoving party." N. Natural Gas Co. v. Nash Oil & Gas, Inc., 526 F.3d 626, 629 (10th Cir. 2008).

### Misappropriation of Trade Secrets

Systemic alleges that Dr. Kim used its formulas and customer list to compete with Systemic, in violation of his employment agreement, and that he was successful in capturing some part of Systemic's market for Innovita.

To establish its claim for misappropriation of trade secrets, Systemic must show (1) the existence of trade secrets, (2) communication of the trade secrets under an express or implied agreement limiting disclosure of the secret, and (3) the Defendants' use of the secrets that injures Systemic. See Water & Energy Sys. Tech., Inc. v. Keil, 1999 UT 16, ¶ 9, 974 P.2d 821. Defendants challenge only Systemic's ability to meet the third requirement, arguing that Innovita's formulas are:

> entirely distinct from Innovita's formulas, the small number of ingredients in common between the two product lines are present in significantly different amounts and ratios, undermining any claims for trade secret misappropriation. . . . Moreover, the few common ingredients between the product lines are just that - common. Both parties use vitamin C, vitamin $B_3$, vitamin $B_6$, vitamin $B_{12}$, vitamin E, and other

---

claim, Defendants' motion for summary judgment on that claim is granted.

> ingredients widely known in the supplement industry. In fact, every ingredient shared by Innovita and Systemic is also used by other herbal supplement companies to target the same body functions.

(Mem. Supp. Mot. Summ. J. at 3.)

Defendants also argue that Systemic's only evidence about the similarity of the products comes from Nicole Wheelwright, who they contend is totally unqualified to give an opinion on that subject. But Defendants did not file a motion to strike her testimony under Daubert and the court, therefore, cannot weigh her credibility. Finally, Defendants claim that Systemic has no evidence that they misappropriated customer lists nor that Systemic has been injured by any of Defendants' allegedly illegal actions.

Although Systemic acknowledges that its formulas and Innovita's are not identical, it contends that Dr. Kim used Systemic's formulas when fashioning Innovita's. Dr. Stuart Wheelwright, the president and C.E.O. of Systemic testified in his affidavit:

> I am aware that Innovita uses the same unique combination of glandular-functioning "formcodes" as Systemic uses through glandular ingredients. Thus, just as Systemic utilizes a combination of adrenal and spleen-derived glandulars in its adrenal product, Defendants also utilize the same combination of adrenal and spleen-derived "formcodes'" within theirs, which is obviously intended to communicate to consumers that it performs the same nutrient-directing function as the glandulars used by Systemic, in a vegetarian form. Likewise, both companies' brain-targeted products contain both pituitary and brain-derived material. Both companies also manufacture a thyroid product containing thymus, spleen and stomach-derived material. The use of peculiar glandular mixes is a trademark of Systemic and my father was well known for his unique methods of combining these glandular ingredients in ways not traditionally thought to treat a particular organ.

(Wheelwright Aff. ¶ 11 (attached as Ex. 28 to Mem. Opp'n Mot. Summ. J.).)

Systemic also points to evidence that Innovita was incorporated while Dr. Kim was working for Systemic and an admission that Dr. Kim allegedly made that he began working on

3

vegetarian formulas while working at Systemic as showing that Dr. Kim used Systemic's proprietary information as a basis for Innovita's products.

Systemic has produced evidence that Defendants marketed and sold their products to Systemic customers within a few months of Dr. Kim's departure from Systemic.

The court concludes that disputed issues of material fact preclude summary judgment.

**Trade Dress Infringement and Unfair Competition**

"Trademark infringement is a type of unfair competition; the two claims have virtually identical elements and are properly addressed together as an action brought under 15 U.S.C. § 1125(a)(1)(B), commonly known as section 43 of the Lanham Act." Utah Lighthouse Ministry v. Found. for Apologetic Infor. and Research, 527 F.3d 1045, 1050 (10th Cir. 2008).

Systemic alleges that "Systemic's trade dress claim primarily arises out of its distinctive sales brochures, which Defendants have virtually copied in marketing their competing products to Systemic's customers, in a way that is designed to cater to Systemic's existing customers." (Mem. Opp'n Mot. Summ. J. at 12.)[2] Systemic has the burden of proving likelihood of confusion based on the similarities between its brochure and Defendants' advertising. See Utah Lighthouse Ministry, 527 F.3d at 1055. "Likelihood of confusion is typically evaluated according to a six-factor test in which the court considers: (1) the degree of similarity between the marks; (2) the intent of the alleged infringer in using the mark; (3) evidence of actual confusion; (4) similarity of products and manner of marketing; (5) the degree of care likely to be exercised by purchasers;

---

[2] Defendants initially argued that Systemic had not identified what trade dress it alleged Defendants had infringed. But in its opposition, as quoted above, Systemic has specified that its trade dress claim is based on its sales brochure. The court cautions that Systemic cannot later try to expand this claim.

4

and (6) the strength or weakness of the marks." Id.

Systemic argues that the similarity between Defendants' sales brochures and Systemic's show that Defendants intentionally copied Systemic's sales brochures. Although Systemic has presented no evidence of actual customer confusion, it argues that "Defendants' intent to copy Systemic's mark – standing alone – gives rise to an inference that Defendants accomplished their goal of creating consumer confusion such that Defendants' motion must be denied as to this claim." (Mem. Opp'n Mot. Summ. J. at vii.) Systemic has provided sufficient evidence for a reasonable jury to find that the trade dress displayed in its brochure is protectable, and that Defendants' use of a similar trade dress was likely to cause confusion among consumers as to the source of the products sold.

**Intentional Interference with Business Relationship**

"To recover damages for tortious interference, a plaintiff must prove (1) that the defendant intentionally interfered with the plaintiff's existing or potential economic relations, (2) for an improper purpose or by improper means, (3) causing injury to the plaintiff." Giusti v. Sterling Wentworth Corp., 2009 UT 2, ¶ 65, 201 P.3d 966 (quotation omitted). Systemic has provided some evidence from which a reasonable jury could infer that Dr. Kim/Innovita solicited Systemic's customers in an effort to poach them (see Innovita's supplemental answer to special interrogatory no. 3 (attached as Ex. 23 to Mem. Opp'n Mot. Summ. J.); Lundstrom aff. ¶ 3 and attached letter (attached as Ex. 21 to Mem. Opp'n Mot. Summ. J.)), and it is undisputed that Innovita made sales to certain Systemic customers.

"[A] breach of contract committed for the immediate purpose of injuring the other contracting party is an improper means that will satisfy [the improper purpose or improper

means] element of the cause of action for intentional interference with economic relations." Leigh Furniture and Carpet Co. v. Isom, 657 P.2d 293, 309 (Utah 1982). If Dr. Kim committed a breach of his employment agreement, and if he did so not just to obtain relief from his contractual obligation, but also to achieve a larger advantage by injuring Systemic in a manner not compensable merely by contract damages, Systemic may have a claim for interference with prospective economic relations. See id.

Systemic has provided sufficient evidence for a reasonable jury to find that some Systemic customers were solicited by Dr. Kim/Innovita, that Innovita made sales to some dual customers, and that these actions were in violation of Dr. Kim's employment agreement. Accordingly, there are disputed issues of material fact related to Systemic's intentional interference with business relationship claim.

**Computer Fraud and Abuse Act Claim**

Under the Computer Fraud and Abuse Act, a private cause of action exists if Dr. Kim knowingly and with intent to defraud accessed a protected computer without authorization or exceeded his authorized access, and caused damage of more than $5,000 in any one year. See 18 U.S.C. § 1030.

Systemic alleges that Dr. Kim forwarded emails sent to his Systemic email address to his new address, after he left Systemic and without permission, and that he had a computer with Systemic's customer list and formulas after he left Systemic. (Wheelwright Aff. ¶¶ 14-15 (attached as Ex. 28 to Mem. Opp'n Mot. Summ. J.).) Systemic attached two emails, which appear to be about supplier pricing, sent to Dr. Kim after he left Systemic. (See June 14, 2007, and August 27, 2007, e-mails to dkim@systemicformulas.com (attached as Ex. 16 to Mem.

Opp'n Mot. Summ. J.).)

The defendants argue that Systemic cannot point to any forwarded emails that resulted in financial injury to Systemic. But even if Systemic cannot show that the forwarded emails caused damage of at least $5,000, Dr. Kim's access to Systemic's customer list and formulas caused much of Systemic's alleged competitive injury, which is far greater than the statutory requirement and forms the basis for this lawsuit.[3]

**Breach of the Employment Agreement**

Systemic alleges that Dr. Kim used Systemic trade secrets (formulas and customer lists) to compete with Systemic and to solicit Systemic customers, all in violation of Dr. Kim's Systemic employment agreement.

In paragraph 7(a) of the employment agreement, Dr. Kim agreed that he would "not . . . engage in any business activity which is competitive with the Business of the Company as now or then conducted. Employee's obligations under this §7(a) shall extend to all geographical areas of the world in which the Company is offering its services either directly or indirectly . . . during the 36 months specified . . . above." (Employment agreement (attached as Ex. T to Mem. Supp. Mot. Summ. J.).) In paragraph 7(b), Dr. Kim agreed that he would "not . . . engage in the solicitation of, any customer . . . that he/she has, during the term of his/her employment solicited or serviced on behalf of the Company . . . or that has been so solicited or serviced, during such period, by any person under Employee's supervision." (Id.)

Covenants not to compete must meet the requirements outlined in Sys. Concepts, Inc. v.

---

[3] In the reply brief, the defendants appear to have dropped the claim that the damage Systemic claims is not the type of damage against which the Act protects.

Dixon, 669 P.2d 421, 425-26 (Utah 1983): (1) the covenants are supported by consideration; (2) no bad faith is shown in the negotiation of the contract; (3) the covenants are necessary to protect the goodwill of the business; and (4) the covenants are reasonable in their time and area restrictions.

Dr. Kim challenges the third and fourth requirements, contending that the covenant was not necessary to protect Systemic's goodwill and that the time restrictions and the geographical restrictions are overbroad. Systemic responds that because of Dr. Kim's position in Systemic, he had access to all of Systemic's proprietary trade secrets and other important information, such as customer lists and marketing information. Moreover, Dr. Kim knew Systemic's customers and had contact with them for many years. For those reasons, Systemic contends that the restrictions in the covenant not to compete were necessary and reasonable.

Finally, Defendants contend that Systemic has no evidence that Dr. Kim breached the employment agreement, relying on its arguments that Innovita's products are different than Systemic's and that neither Dr. Kim nor anyone else associated with Innovita has solicited Systemic's customers or sales representatives. The court has discussed this evidence earlier in its order.

The court finds that there are disputed issues of material fact that preclude summary judgment on this claim.

**ORDER**

For the foregoing reasons, Defendants' motion for summary judgment (Dkt. No. 235) is denied (except, as noted in footnote 1, to the extent that Systemic maintains a claim for trademark infringement, Defendants' motion for summary judgment is granted as to that claim).

Defendants' motion to strike the declaration of Stuart Wheelwright on the grounds that Mr. Wheelwright admitted knowing nothing about computers (Dkt. No. 275) is denied. Mr. Wheelwright's admitted ignorance about computers does not, in and of itself, render Mr. Wheelwright incompetent to testify about whether Dr. Kim's computer contained Systemic's customer list and formulas or about whether Dr. Kim took a computer containing Systemic's customer list and formulas with him when he left Systemic.

SO ORDERED this 3rd day of September, 2010.

BY THE COURT:

*[signature: Tena Campbell]*

TENA CAMPBELL
Chief Judge