IN THE UNITED STATES JUDICIAL DISTRICT COURT
FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| SYSTEMIC FORMULAS, INC., a Utah corporation,<br><br>        Plaintiff,<br><br>vs.<br><br>DAEYOON KIM; an individual; INNOVITA, LLC, a Utah Limited Liability Company; and, DOES 1 through 50, inclusive,<br><br>        Defendants. | MEMORANDUM DECISION AND ORDER GRANTING IN PART PLAINTIFF'S MOTION TO ADJUDICATE SANCTIONS [227];<br>ORDER REGARDING POSSIBLE ADDITIONAL SANCTIONS; and ORDER SETTING SCHEDULING CONFERENCE<br><br>~~FILED UNDER SEAL~~<br>**Redacted version filed in open docket**<br><br>Case No: 1:07-CV-159 TC<br>District Judge Tena Campbell<br><br>Magistrate Judge David Nuffer |

       This order requires Plaintiff to pay $35,400 attorney's fees sanctions for improper use of Defendants' customer information which was subject of a Protective Order. This order also requires Plaintiff to provide information to allow the magistrate judge to recommend the district judge impose further monetary sanctions, related to damage to Defendants' customer relations, conditional on the outcome of the case.

## Breach of Protective Order

       The magistrate judge issued an Order[1] determining that Michael Vivoli, former counsel for Plaintiff Systemic Formulas Inc. (Systemic), violated the Protective Order[2] in this case. The Order determined that Vivoli passed to his client (Systemic) confidential customer information Vivoli received from Defendants Kim and Innovita (Innovita). The confidential customer

---

[1] Memorandum Decision and Order (Order), docket no. 201, filed December 23, 2009.

[2] Stipulated Protective Order re: Information Exchanged in Discovery (Protective Order), docket no. 24, filed February 21, 2008.

information was appropriately designated as "Attorneys' Eyes Only" under the Protective Order, but Vivoli nonetheless disclosed it to his client.

Mr. Vivoli compared Innovita's customer list with Systemic's customer list and noticed that several of Innovita's customers were also customers of his client Systemic. Vivoli compiled a third list containing the customers Innovita and Systemic had in common. On December 8, 2008, Mr. Vivoli sent the list containing the common customers to Systemic Vice President Nicole Wheelwright Sugihara[3] and asked her to provide him with sales information for each of those customers for the three year period prior to Defendant Daeyoon Kim leaving Systemic.[4] Vivoli told his client not to speculate on the source of the list because, in his words, "that would be wrong."[5]

Though he recognized something was wrong at the time of the delivery, Vivoli later insisted that his list was only a list of *Systemic* customers and that he was within his rights to refer to or rely upon protected information when rendering advice to his client.[6] These arguments were rejected by the magistrate judge[7] and on review by the district judge.[8] Vivoli ignored the clear language of the Protective Order and the strong policy reasons for insisting on trustworthy behavior from those entrusted with highly sensitive information. Much commercial litigation would be impossible without the ability to rely on protective order constraints. Systemic's attorney improperly disclosed the highly sensitive customer list; placed it in the

---

[3] Declaration of Nicole Wheelwright Sugihara (Sugihara Declaration) at 2-3, attached as Exhibit B to Plaintiff's Response and Opposition (Systemic Opposition), docket no. 233, filed under seal January 29, 2010.

[4] Order at 3.

[5] Order [of Judge Campbell] (Campbell Order) at 2, docket no. 238, filed February 4, 2010.

[6] Order at 4.

[7] Order at 5.

[8] Campbell Order at 2.

hands of a competitive decision maker; and undermined the fundamental protections for sensitive information necessary in cases between competitors.

## Initial Order Regarding Sanctions

The magistrate judge disqualified Mr. Vivoli from further participation in this case, from access to any protected information in this case, and from any appearance pro hac vice in this court for a period of three years.[9] That latter restriction was reversed on review by the district judge.[10]

To assist in determining an appropriate monetary sanction, the magistrate judge required Innovita to provide "gross sales volume for the time period January 2008 through December 2009 for each of the clients affected by the improper disclosure" and permitted Systemic to respond.[11] The Order stated "[t]his may provide a measure for monetary and any other sanctions to be imposed."[12]

Innovita was also invited to submit "a summary of all attorneys' fees incurred by Innovita with respect to the three motions resolved in this order and in fulfilling the obligations of this order."[13]

## Initial Response Regarding Monetary Sanctions

Innovita provided a financial summary showing that the customers who were listed ordered less from Innovita after the disclosure, while sales to other customers increased markedly.[14] Systemic responded with a vigorous rejection of the sales and attorney fee data

---

[9] Order at 6, 9-10.

[10] Campbell Order at 3.

[11] Order at 7.

[12] Order at 5.

[13] Order at 10.

[14] Defendants' Submission of Sales Data for Clients Affected by Plaintiff's Violation of the Protective Order (Defendant's Submission), docket no. 210, filed under seal January 8, 2010.

provided by Innovita, including a report from an expert criticizing the methodology used and data Innovita provided.[15] Innovita moved to strike the declaration from Systemic's expert,[16] and that motion was granted.[17] The expert declaration went to issues not raised in the Order. The Order was searching to see if gross sales statistics could be used as a determinant of sanctions. Expert reports were not requested or desired.

## Additional Submissions

Following the initial response, the magistrate judge ordered additional filings.[18] Defendants itemized[19] the $35,400.00[20] they spent in attorney's fees and costs. Systemic summarized the $58,631.53 attorneys' fees and costs[21] it incurred because of its breach of the Protective Order:

- Current counsel billed $31,290.25;[22]
- Former counsel billed $18,956.40;[23] and
- The expert (whose report was stricken) billed $8,384.88.[24]

Defendants filed (under seal) customer sales data for each of the customers affected by the improper disclosure, and for those not affected.[25] Defendants also argued the significance of this data.[26] The data show that Innovita sales **substantially increased** for customers whose

---

[15] Declaration of David Nolte, attached as Exhibit C to Plaintiff's Response and Opposition, docket no. 233, filed under seal January 29, 2010.

[16] Defendants' Motion to Strike the Declaration of David Nolte, docket no 242, filed February 16, 2010.

[17] Memorandum Decision and Order . . . , docket no. 305, filed September 22, 2010.

[18] *Id.*

[19] Exhibit D to Declaration of Stephen H. Bean, docket no. 310, filed under seal September 22, 2010.

[20] Defendants' Submission at 5.

[21] Declaration of Scott R. Ryther, ¶7, docket no. 307, filed under seal October 15, 2010.

[22] *Id.* ¶4.

[23] *Id.* ¶5.

[24] *Id.* ¶6.

[25] Exhibits A, B, and C to Declaration of Stephen H. Bean, docket no. 310, filed under seal September 22, 2010.

[26] Defendants' Submission.

identities were not disclosed to Systemic by Mr. Vivoli and that sales **substantially decreased** for customers whose identities he did disclose.





Sales to the disclosed customers decreased over ▇ in 2009 and appear that they will drop more than ▇ in 2010.

### Should Sanctions Be Imposed?

Systemic argues sanctions should not be imposed because its own fees and expenses have caused it enough suffering.[27] This statement shows a remarkable lack of perspective. Systemic and Defendants agreed to protect information this litigation required they exchange. Systemic's lawyer breached the agreement. Reliance on protective orders and the diligence of counsel in observing them is fundamental to litigation between competitors. In order to effectively

---

[27] Plaintiff's Response to Defendants' Submission of Sales Data . . . (Plaintiff's Response) at 7, docket no. 311, filed under seal November 1, 2010.

adjudicate, information must be assembled and evaluated before trial and presented at trial, subject to controls ensuring that litigation remedies wrongs rather than creating them. If courts, counsel and parties could not rely on protection of confidential information, adjudication of disputes would be prevented in many instances and impaired in others. The relative infrequency of violations of these orders speaks volumes about the quality and integrity of counsel. Just like the thin yellow line in the middle of the highway, protective orders are an accepted standard that avoids disaster. Integrity and self preservation instinct prevent head-on collisions and the sort of unfair advantage (and distracting side litigation) that have occurred here. Sanctions are needed to preserve the integrity of the system.

The court has inherent authority to enforce its orders[28] but the Federal Rules of Civil Procedure provide specifically that a party which fails to obey a pretrial order (which includes protective orders) is subject to "orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii),"[29] *and* must "pay the reasonable expenses – including attorney's fees – incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust."[30] Neither of the exculpatory clauses apply here.

## Attorney's Fees Sanctions

The attorney's fees incurred by Defendants in the proceedings since their Motion for Contempt and Sanctions for Plaintiff's Violation of the Protective Order[31] clearly flowed from the improper use and disclosure of Defendants' customer information. The reasonableness of those fees is shown by the fact that the $35,400 claimed is far less than the $58,631 fees and

---

[28] *Pyramid Real Estate Services, LLC v. U.S.*, No. 10-599C., 2010 WL 4983595, *9 (Ct. Fed. Cl. Dec. 9, 2010).

[29] Fed. R. Civ. P. 16(f)(1).

[30] Fed. R. Civ. P. 16(f)(2).

[31] Docket no. 167, filed September 8, 2009.

expenses incurred by Plaintiff. The magistrate judge will order payment of the attorney's fees incurred by reason of Systemic's improper access to Defendants' protected information.

## Sanctions Related to Lost Sales

The magistrate judge ordered that gross sales figures be supplied to determine whether sanctions related to unfair market advantage might be appropriate. It is apparent that there is some demonstrated loss.

Systemic also points out that its *claims in this case* that Defendants have wrongfully competed with them might negate Defendants' claimed losses from Systemic's improper access to the list of Defendants' best customers.[32] This ignores the fact that Systemic's improper access is adjudicated and Defendants' liability is merely a claim. However, it probably makes sense to defer any imposition of monetary sanctions based on interference with customers until after determination if those customers were wrongfully obtained by Defendants. If they were, Defendants' losses due to Systemic interference would be moot. If they were not, Defendants' losses due to Systemic interference would be a proper basis for sanctions.

Measuring Defendants' losses due to Systemic interference is challenging. Using actual financial loss as a measure would invite a distracting and expensive battle of discovery and experts. As Systemic points out, factors other than the disclosure, including vigorous competition, might be a cause of declining sales from these common customers. But Systemic should not be allowed to benefit from its improper access to the customer list.

In order to further ascertain the range of possible monetary sanctions, Systemic will submit further information to the court. The magistrate judge may recommend that the district judge, in the event the finding at trial is that Defendants have not infringed on Plaintiff's rights,

---

[32] Plaintiff's Response at 5.

enter a monetary sanction against Plaintiff for the improper use of Defendants' customer information.

**ORDER**

IT IS HEREBY ORDERED:

1. The motion to adjudicate sanctions[33] is GRANTED IN PART as provided herein.

2. Plaintiff shall pay the sum of $35,400 to Defendants as a monetary sanction for violation of the Protective Order. This sum is due on or before January 28, 2010.

3. On or before January 21, 2010, Plaintiff shall submit the gross sales information for the customers identified in Exhibit A to the Declaration of Stephen H. Bean, docket no. 310, filed under seal September 22, 2010, for the same time periods shown in that Exhibit.

4. The parties shall meet and confer regarding a schedule for this case and on or before January 14, 2011, shall submit a joint report including a stipulated schedule and any disputed elements.

5. If the parties are unable to completely stipulate as to the remaining schedule in the case, the parties shall appear at a Scheduling Conference Wednesday January 19, 2010, at 9:30 a.m. in Room 436.

Dated January 3, 2011.

BY THE COURT:

_____
David Nuffer
U.S. Magistrate Judge

---

[33] Plaintiff's Motion to Adjudicate Sanctions, docket no. 227, filed January 29, 2010.